FILED

2026 Jun-30  AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GROVES ENTERPRISES, INC.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:23-cv-340-ACA** |
| | } | |
| **AFC FRANCHISING, LLC,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |
| | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Groves Enterprises, Inc., and Defendant AFC Franchising, LLC ("AFCF") entered a "master developer agreement," under which Groves would develop and open AFC franchised urgent care centers. Groves developed, opened, and sold a number of centers during the term of the agreement. The agreement provided that Groves could request a successor agreement if it satisfied certain requirements. When Groves requested a successor agreement, AFCF rejected that request and terminated the master developer agreement on the basis that Groves had defaulted on the agreement by failing to operate an AFC center itself. Groves sued AFCF, asserting that (1) AFCF breached the master developer agreement by wrongfully terminating it ("Count One"); and (2) AFCF breached the master

developer agreement by wrongfully refusing to offer a successor agreement ("Count Two"). The judge who previously presided over this action found that Groves was not in default, and therefore entered summary judgment in Groves's favor as to liability for Count One, leaving damages for trial.

The parties have now filed cross-motions for summary judgment as to Count Two. (Docs. 68, 70). The court **WILL GRANT** Groves's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in its favor as to liability for Count Two. The court **WILL DENY** AFCF's motion for summary judgment as to Count Two.

## I.    BACKGROUND

On cross-motions for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018) (quotation marks omitted). The parties here do not genuinely dispute any material facts, although they disagree about the conclusions to draw from those facts. (*See* doc. 68 at 1–19; doc. 73 at 6–13; doc. 74 at 3–7).

In 2009, Groves and the predecessor to AFCF[1] entered into a "master developer agreement," under which Groves would develop, own, and operate AFC urgent care centers, assist AFCF with the sale of franchises to franchisees, and

---

[1] For the sake of simplicity, this court will refer to both AFCF and its predecessor as AFCF.

support and monitor franchisees in a defined territory. (Doc. 72-1 at 6). Section 1.1(a) of the agreement required Groves to "develop and have open and in operation at least one franchised [urgent care] in the Territory . . . by no later than three hundred sixty five (365) days following execution of this Agreement." (*Id.* at 7).

The initial term of the agreement was fifteen years. (*Id.* at 10). The agreement uses two different phrases to describe Groves's ability to enter a successor agreement. In the introductory paragraph of section 2.2, the agreement states that if Groves met "certain conditions, then [it would] have the option to request the right to operate the Master Developer Business for four (4) successor terms" of five years each. (*Id.* at 10). In the second paragraph of the same section, the agreement states that if Groves met the conditions, it would "have the option to execute a successor master developer agreement . . . immediately upon the expiration of this Agreement." (Doc 72-1 at 10).

The conditions Groves had to meet were (1) substantial compliance with the master developer agreement during the fifteen-year term; and (2) full compliance with the master developer agreement and "other agreements with [AFCF]," both on the date Groves elected to request a successor master developer agreement and on the date on which the successor master developer agreement would start. (*Id.* at 10).

Section 2.2 further provided that Groves would have to sign a successor master developer agreement that AFCF "then customarily use[d] to grant franchises for Master Developer Businesses . . . , which may contain provisions that differ materially from any and all of those contained in" the master developer agreement. (*Id.* at 10). It also required Groves to sign general releases "of any and all claims against [AFCF]" and warned that "failure to sign these agreements and releases and to deliver them to us for acceptance and execution within thirty (30) days after their delivery to you [would be considered] an election not to be granted a successor master developer agreement." (*Id.* at 10).

Section 2.3 provided that, once Groves notified AFCF of its "election to request a successor master developer agreement," AFCF would notify Groves of its decision:

(a) to grant [Groves] a successor master developer agreement;

(b) to grant [Groves] a successor master developer agreement on the condition that [Groves] correct existing deficiencies of [its] Master Developer Business and/or satisfy our then current qualifications, certification, and training requirements; or

(c) not to grant [Groves] a successor master developer agreement based on [AFCF']s determination that [Groves] and [its] owners have not substantially complied with this Agreement, other agreements us, our affiliates, and [its] suppliers during its term or were not in full compliance with this Agreement and all System Standards on the date [Groves] gave [AFCF] written notice of [its] election to request a successor master developer agreement.

(Doc. 72-1 at 11).

4

Because Groves and AFCF signed the master developer agreement in March 2009, the agreement was set to expire in March 2024. (*See id.* at 2, 10). By 2022, Groves had opened fifteen franchised AFC centers, of which it operated seven, and it was in the process of opening three more. (Doc. 72-2 at 4 ¶ 10). Groves sought AFCF's approval to sell the ten centers that it either operated or was developing. (*See id.* at 4 ¶ 11). While discussing the sale, AFCF made clear its position that the master developer agreement required Groves to continue operating at least one center. (*Id.* at 16). Groves disputed that interpretation of the agreement and asked where that provision was located in the master developer agreement. (*Id.* at 14–16). In response, AFCF wrote that it would "certainly abide by the requirements within the Master Developer Agreement. Our hope is that any active master would retain at least one center in their market." (Doc. 72-2 at 14). Several months later, AFCF reiterated its position that the master developer agreement required Groves to own and operate at least one clinic. (Doc. 36-2 at 15–17).

Based on this communication, Groves amended its agreement with the buyer of its centers to carve out a geographic area where it could open a new AFC center if necessary. (Doc. 67-2 at 17). With AFCF's approval, Groves completed the sale of the ten centers in February 2023. (Doc. 72-2 at 5 ¶ 14). When Groves proposed opening a new center to AFCF, an AFCF employee told Groves that "it didn't make

any sense" for Groves to do that. (Doc. 67-2 at 19). Groves therefore did not open a new location. (*Id.*).

Groves filed suit against AFCF in May 2023, seeking a declaratory judgment about whether the master developer agreement obliged it to continue operating at least one center. (Doc. 1 ¶ 52). The next month, AFCF sent Groves a letter stating that Groves was in default of the master developer agreement because Groves did not have a location in operation. (Doc. 72-5 at 2). A few days later, Groves notified AFCF of Groves's election to request a successor master developer agreement. (Doc. 72-4 at 3).

In September 2023, AFCF sent Groves a letter terminating the master developer agreement (which otherwise would have remained in effect until March 30, 2024 (*see* doc. 72-1 at 10)) and electing not to grant a successor master developer agreement "as outlined in [the] notice of default" (doc. 72-6 at 2). Groves then amended its complaint, removing its request for a declaratory judgment and replacing it with two breach of contract claims: one that ACFC had breached the contract for wrongfully terminating the master developer agreement and one that ACFC had breached the contract by wrongfully refusing to grant a successor master developer agreement. (Doc. 23 ¶¶ 74–89; *see also* doc. 20).

While litigation between Groves and AFCF was proceeding during the summer and fall of 2023, AFCF entered negotiations for successor agreements with

four other master developers. (Docs. 69-6 to 69-9). Between February 2024 and August 2024, AFCF and those other master developers entered successor agreements, which they called "renewal amendments to master developer agreement." (Docs. 69-6 at 3; doc. 69-7 at 5; doc. 69-8 at 8; doc. 69-9 at 6). Each renewal amendment contained a provision requiring the master developer to "have open and in operation at all times during the Renewal Term at least one (1) AFC Center that Master Developer, directly, or through a wholly-owned subsidiary, owns and operates." (Docs. 69-6 at 4; doc. 69-7 at 6; doc. 69-8 at 9; doc. 69-9 at 7).

Groves and AFCF previously submitted motions for summary judgment about the claim that ACFC breached the contract by wrongfully terminating the master development agreement. (Docs. 34, 37). The judge previously presiding over this matter granted partial summary judgment to Groves with respect to liability on that claim. (Docs. 45, 46). The court explained that Groves was not in default of the master developer agreement because that agreement unambiguously required only that Groves open a franchised center within the time required by ACFC, not that Groves continue operating a center after that time. (Doc. 45 at 9–10; *see* doc. 72-1 at 7). The court therefore found that ACFC was liable for breaching the contract by wrongfully terminating the master developer agreement. (Doc. 45 at 11; doc. 46 at 1).

## II.    DISCUSSION

The only claim before the court at this point is Groves's claim that AFCF breached the master developer agreement by wrongfully refusing to grant a successor agreement. (Doc. 23 ¶¶ 81–89). Specifically, Groves alleges that the master developer agreement gave it a right to a successor agreement as long as it fulfilled two conditions, and the court has already found it was in compliance. (*Id.*; doc. 73). ACFC does not dispute that it breached the agreement, but it argues that Groves cannot prove damages from the breach. (Doc. 68). The court begins with Groves's motion before turning to AFCF's motion.

### 1.  Groves's Motion for Summary Judgment

Maryland law governs this contract dispute. (*See* doc. 72-2 at 30). Under Maryland law, a breach of contract claim requires only "the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010). Maryland law does not require a plaintiff to prove damages as an element of the claim. *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001).

Groves contends that the master developer agreement required ACFC to offer it a successor agreement as long as it satisfied two requirements: (1) being in substantial compliance with the agreement during its term and (2) being in full

8

compliance with the agreement when Groves requested renewal.[2] (Doc. 73 at 16). It argues that because AFCF's sole reason for refusing to offer a successor agreement was Groves's failure to have a center in operation, and the court previously found that the master developer agreement did not have such a requirement, the court must also find that AFCF breached the master developer agreement by failing to offer a successor agreement. (Doc. 73 at 16–17). AFCF responds that Groves cannot prevail on its breach of contract claim because damages from the failure to offer a successor agreement are too speculative and Groves would not have been able to comply with the terms of the successor agreement that AFCF would have proposed. (Doc. 77 at 3–5).

### a. Speculative Damages

Maryland law squarely forecloses AFCF's argument that Groves cannot prevail on liability because it cannot establish damages. *See Taylor*, 776 A.2d at 651 ("It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages."). The court therefore rejects that argument.

---

[2] Groves acknowledges that the agreement also required it to be in full compliance on the date the successor agreement would commence. (Doc. 73 at 16 n.2). It contends, however, that AFCF's wrongful termination of the master developer agreement before the successor term could have commenced obviated that requirement. (*Id.*). AFCF does not dispute that contention. (*See generally* doc. 78).

> b. *Groves's Ability to Comply with the Terms of the Successor Agreement AFCF Would Have Proposed*

The master developer agreement provided that as long as Groves could satisfy two conditions, Groves would "have the option to execute a successor master developer agreement." (Doc. 72-1 at 10). This language unambiguously required AFCF to offer Groves a successor agreement if Groves satisfied the conditions. (*See id.*). The only reason AFCF gave for refusing to offer a successor agreement was Groves's purported default by failing to keep a center in operation. (*See* doc. 72-5 at 2; doc. 72-6 at 2). But as the previous court found, the master developer agreement did not require Groves to keep a center in operation, so Groves was not in default. (*See* doc. 45 at 10–11; *see also* doc. 72-1 at 7).

AFCF now argues that Groves could not have satisfied the second requirement—that Groves be in full compliance with both the master developer agreement and "other agreements" with AFCF when the successor agreement would commence—because the successor agreement AFCF would have offered would have included a requirement that Groves could not have satisfied: that it have a center in operation by the date the successor term began. (Doc. 77 at 3–4; *see also* doc. 68 at 8–9). This argument fails. Groves and AFCF never entered a successor agreement, nor did they ever begin negotiations about the terms of a successor agreement. (*See* doc. 72-6 at 2). Groves's failure to comply with terms in a

nonexistent agreement cannot establish that Groves failed to comply with an agreement with AFCF.

AFCF also argues that Groves failed to satisfy the master developer agreement's requirement that Groves sign and deliver general releases to AFCF. (Doc. 77 at 3; doc. 68 at 9–10). But the master developer agreement clearly contemplates AFCF drafting the releases and providing them to Groves together with the proposed successor agreement, after which Groves would have to sign and return the releases and successor agreement to AFCF. (Doc. 72-1 at 10). AFCF offers neither argument nor evidence that it provided general releases (or a proposed successor agreement) to Groves. (*See generally* docs. 68, 77). Because the requirement to return signed releases to AFCF had not arisen when AFCF breached the agreement, Groves's failure to return those releases was not a default that warranted refusing to offer a successor agreement.

Groves has offered evidence that it satisfied the only two requirements necessary for it to request a successor agreement. AFCF's contractual obligation was therefore to offer Groves a successor agreement. (*See* doc. 72-2 at 10). AFCF failed to make that offer. (*See* doc. 72-6 at 2). With respect to liability, it is irrelevant that the offer AFCF did not make might have contained terms different from the original master developer agreement or that Groves never returned releases that AFCF never provided. *See RRC Ne., LLC*, 994 A.2d at 442; *Taylor*, 776 A.2d at 651. The court

therefore **WILL GRANT** Groves's motion for summary judgment and **WILL ENTER** summary judgment in Groves's favor on AFCF's liability for breaching the contract by failing to offer Groves a successor master developer agreement.

    2.  <u>AFCF'S Motion for Summary Judgment</u>

AFCF contends that it is entitled to summary judgment because Groves cannot establish it suffered any damages. (Doc. 68 at 6–10). As set out above, damages are not an element of a breach of contract claim under Maryland law. *Taylor*, 776 A.2d at 651. Accordingly, even a failure to establish damages would not warrant entry of summary judgment in AFCF's favor. However, because AFCF offers specific arguments about Groves's ability to prove actual damages and Groves responded substantively to those arguments, the court construes AFCF to move for summary judgment as to actual damages.

First, AFCF argues that under *Adcor Industries, Inc. v. Beretta U.S.A. Corp.*, 248 A.3d 1137 (Md. Ct. Spec. App. 2021), Groves cannot recover damages from the breach of a nonexistent contract. (Doc. 68 at 7). *Adcor* is distinguishable. In that case, two gun manufacturers entered into a nondisclosure agreement so that they could discuss a joint venture to produce a new type of gun. 248 A.3d at 1139–40. The joint venture never materialized and the defendant violated the nondisclosure agreement by failing to return certain confidential information to the plaintiff. *Id.* at 1140–41. The plaintiff sued the defendant for violating both the nondisclosure

agreement and an alleged agreement to develop the gun. *Id.* at 1141–42. All the plaintiff's claims except for breach of the nondisclosure agreement failed either at summary judgment or at trial. *Id.* at 1142–43. But the jury awarded the plaintiff $20 million in compensatory damages for the violation of the nondisclosure agreement. *Adcor Indus., Inc.*, 248 A. 3d at 1143. The trial court found that the plaintiff had not presented any evidence of actual damages, vacated the award, and entered a judgment for nominal damages in the amount of one dollar. *Id.*

On appeal, the plaintiff argued the jury could have awarded damages based on evidence it had presented about profit projections for the failed joint venture. *Id.* at 1150–51. The Maryland Court of Special Appeals explained that damages for a breach of contract must be "proven with reasonable certainty." *Id.* at 1147. "Losses that are speculative, hypothetical, remote, or contingent either in eventuality or amount will not qualify as reasonably certain and therefore recoverable as contract damages." *Adcor Indus., Inc.*, 248 A.3d at 1147. The Court of Special Appeals then affirmed the reduction of the verdict. *Id.* The Court noted that the plaintiff had not appealed the dismissal of the counts relating to the failure of the joint venture and explained that the trial evidence "showed that [the plaintiff] never realized any revenues or profits from the [gun] not because [the defendant] breached the [nondisclosure agreement], but rather because [the defendant] chose not to do business with [the plaintiff], *which was its right*." *Id.* at 1151 (emphasis added). The

13

Court of Special Appeals rejected the plaintiff's argument that "as damages for breach of a contract that *was* made, the non-breaching party is entitled to the damages it would have incurred for breach of a contract that *wasn't* made." *Id.* at 1150–51.

In *Adcor*, the plaintiff failed to prove that any agreement to produce the gun existed or that the breach of the nondisclosure agreement caused the failure of the joint venture, yet it attempted to recover damages from the failure of that agreement based on the breach of the nondisclosure agreement. *See Adcor Indus., Inc.*, 248 A.3d at 1142–43, 1147. By contrast, here, Groves proved that AFCF's failure to offer the successor agreement to Groves was a breach of the master developer contract. AFCF was therefore contractually obliged to offer Groves a successor agreement. (*See* doc. 72-1 at 10). Accordingly, unlike *Adcor*, the plaintiff here has proved a causal link between the nonexistent successor agreement and damages for the breach of the existing contract. The *Adcor* decision does not require this court to find as a matter of law that Groves suffered no actual damages from the breach of contract.

Next, AFCF argues that allowing Groves to recover damages arising from the lack of a successor agreement would put Groves in a better position than it would have been in if AFCF had offered Groves the successor agreement because (1) the successor agreement would have had a provision with which Groves could not

14

comply; and (2) Groves would not have signed general releases, as required by the master developer agreement. (Doc. 68 at 8–10). The court rejects the argument about the general releases for the same reason discussed above but will address the argument about Groves's ability to comply with the unoffered successor agreement in more detail.

The master developer agreement gave AFCF three options if Groves elected to request a successor agreement. (*See* doc. 72-1 at 11). Under section 2.3.1, AFCF could either (a) grant the successor agreement, (b) grant the successor on condition that Groves correct "existing deficiencies" or satisfy certain qualification, certification, and training requirements, or (c) deny a successor agreement for Groves's failure to comply with the master developer agreement. (Doc. 72-1 at 11). Groves contends that only section 2.3.1(b) permitted AFCF to change the terms of the offered successor agreement, and if AFCF wanted to proceed under that section, it had to comply with another section, which required AFCF to provide notice of any deficiencies and time to correct them. (Doc. 74 at 10).

But section 2.3.1(a) does not provide that AFCF had to grant an identical successor agreement. (*See* doc. 72-1 at 11). And section 2.2 of the master developer agreement provided that the successor agreement "may contain provisions that differ materially from any and all of those contained in [the master developer agreement]." (Doc. 72-1 at 10). Taking these sections together, it is clear that as long as Groves

15

was in full compliance with the master developer agreement, AFCF was required to offer a successor agreement, but it was permitted to alter the terms of the agreement it offered, even in material ways. (*See id.* at 10–11). The court rejects Groves's argument that only section 2.3.1(b) of the agreement permitted AFCF to offer a successor agreement that differed from the master developer agreement. (*See* doc. 74 at 9–10).

AFCF contends that any successor agreement it offered Groves would have included a term with which Groves could not have complied: that Groves be operating a center on the date the successor agreement commenced. (Doc. 68 at 8–9). In support of that contention, it offers undisputed evidence that it had told Groves it wanted its master developers to operate at least one center, it amended four successor agreement from February 2024 on to include such a term, and Groves could not have begun operating a new center by the time the master developer agreement expired. (*Compare id.* at 4 ¶¶ 17–19, *with* doc. 74 at 5; *compare* doc. 77 at 1–3 ¶¶ 1–13, *with* doc. 78). In response, Groves contends only that Maryland's implied duty of good faith and fair dealing would have barred AFCF from imposing a new term with which Groves could not comply unless AFCF also gave Groves a reasonable time within which to comply. (Doc. 74 at 11–13).

Maryland law imposes on parties to a contract a duty of good faith and fair dealing. *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (2009).

16

"That implied obligation governs the manner in which a party may exercise the discretion accorded to it by the terms of the agreement. Thus, a party with discretion is limited to exercising that discretion in good faith and in accordance with fair dealing." *Id.* (citation omitted).

Groves argues that AFCF adding terms to the successor agreement that made compliance impossible from the start "would effectively allow any contracting party with a renewal option to deny renewal at will simply by adding a new requirement to the renewal document with which the other party could not comply at the time of the request." (Doc. 74 at 11). AFCF does not dispute that adding a term that Groves could not satisfy would violate its duty of good faith and fair dealing. (*See* doc. 77 at 4–5). The court therefore will assume, for purposes of summary judgment, that adding such a term would violate the duty. Instead, AFCF contends that the term was not impossible because Groves knew in 2022 that AFCF wanted its master developers to operate at least one center, so Groves had time to comply with that demand before Groves exercised its option to request a successor agreement in 2023.[3] (Doc. 77 at 4).

As the court has previously found, the master developer agreement did not require Groves to keep a center in operation. (*See* doc. 45 at 9–10). And AFCF

---

[3] The court also notes AFCF's argument that the successor agreement "required negotiation" (doc. 77 at 3), and its assertion that Groves's owner "knew that AFCF would work with Groves if he found a location and developed a timeline to open a facility" (*id.* at 2 ¶ 10).

presents no evidence that it notified Groves that it would amend the proposed successor agreement to include such a requirement. (*See* doc. 77 at 2). The only evidence is that AFCF advised Groves that it interpreted the master developer agreement to contain such a requirement. (Doc. 36-2 at 15–17; doc. 67-2 at 17, 19; doc. 72-2 at 14–16). Taken in the light most favorable to Groves, a factfinder could conclude that Groves did not have notice that AFCF would amend the successor agreement to include a requirement that Groves have a center operating as of the commencement of that agreement. As a result, a factfinder could conclude that changing the term of the successor agreement to require Groves to have a center in operation would have violated AFCF's duty of good faith and fair dealing by imposing an impossible term.

In closing, the court notes that Groves argues it can prove damages arising from the denial of a successor agreement with "reasonable certainty" based on its "financially successful operation of its master developer business for nearly 14 years up to the time that AFCF wrongfully terminated and denied renewal." (Doc. 74 at 15). Groves cites no evidence in support of its assertion that it was financially successful or that past financial success predicts its future financial success with "reasonable certainty" under Maryland law. (*See generally* doc. 74). Nevertheless, AFCF, as the moving party, bears the "initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that

should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). It has not done so. The court therefore **WILL DENY** AFCF's motion for summary judgment as to Groves's ability to prove actual damages from the failure to offer Groves a successor agreement.

### III.   CONCLUSION

The court **WILL GRANT** Groves's motion for summary judgment as to AFCF's liability for breaching the master developer agreement by failing to offer Groves a successor agreement. The court **WILL DENY** AFCF's motion for summary judgment as to Groves's ability to prove damages from the breach.

**DONE** and **ORDERED** this June 30, 2026.

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE